1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10                              San Francisco Division

11

12   ANGELIA GREEN,                          Case No.  14-cv-04281-LB

                    Plaintiff,
13                                           **ORDER GRANTING THE**
        v.                                   **DEFENDANTS' MOTION TO DISMISS**
14
                                             [Re: ECF No. 35]
15   CENTRAL MORTGAGE COMPANY, et
     al.,
16                  Defendants.

17                                  **INTRODUCTION**

18        The plaintiff Angelia Green sued three defendants—Central Mortgage Company ("CMC"),

19   PLM Loan Management Services, Inc. ("PLM"), and Deutsche Bank National Trust Company as

20   Trustee for Harborview Mortgage Loan Trust 2007-2 ("Deutsche Bank")—for violating federal

21   and California law in relation to the denial of her loan modification application and the foreclosure

22   on her home. (First Amended Complaint ("FAC"), ECF No. 22.[1]) The court approved the parties'

23   stipulation that PLM has non-monetary status pursuant to California Civil Code § 2924l and does

24   not have to participate as a party to this action at this time. (Stipulation and Order, ECF No. 45.)

25   CMC and Deutsche Bank, though, moved to dismiss Ms. Green's First Amended Complaint

26   (Motion, ECF No. 35.) Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-

27   _____

28   [1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to
     the ECF-generated page numbers at the tops of the documents.

     ORDER (No. 3:14-cv-04281-LB)

1(b), the court finds this matter suitable for determination without oral argument. The court grants

their motion. Ms. Green may file a Second Amended Complaint by September 23, 2015.

## STATEMENT

## I. MS. GREEN'S ALLEGATIONS

In 1977, Ms. Green's parents, Robert Tregre and Rosia Tregre (the "Tregres"), purchased

property at 823 Templeton Avenue, Daly City, California 94104 (the "Property"). (FAC ¶¶ 3, 11,

21, 25.) On September 15, 2006, the Tregres created the Robert J. Tregre & Rosia L. Tregre

Family Revocable Living Trust (the "Trust"), and they placed the Property into it. (*Id.* ¶¶ 24, 25.)

Upon the death of the Tregres, all of the Trust's assets—including the Property—were to be

distributed to Ms. Green, the Trust's beneficiary. (*Id.* ¶ 26.) Ms. Green is the trustee under the

Trust. (*Id.* ¶ 27.)

On January 11, 2007, the Trust entered into a refinance loan transaction (the "Loan") and

secured the Loan with the Property through a deed of trust (the "Deed of Trust"). (*Id.* ¶ 28;

Request for Judicial Notice ("RJN"), ECF No. 36, Ex. 1.[2]) The Trust was listed as the "borrower"

---

[2] The defendants ask the court to take judicial notice of the following 11 documents: (1) a Deed of Trust recorded on January 22, 2007, in the San Mateo County Recorder's Office bearing instrument number 2007-009851; (2) an Assignment of Deed of Trust recorded March 4, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014-017912; (3) a Substitution of Trustee recorded March 4, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014-017913; (4) a Notice of Default recorded March 7, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014-019210; (5) a Notice of Trustee's Sale recorded June 12, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014-051353; (6) an Assignment of Deed of Trust recorded September 23, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014-086030; (7) a Trustee's Deed Upon Sale recorded September 23, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014-086031; (8) an Order and Notice of Dismissal for Failure to Comply entered on September 23, 2014 with the United States Bankruptcy Court bearing bankruptcy case number 14-31336-HLB 13; (9) a Verified Complaint filed on January 29, 2015, with the San Mateo County Court bearing case number CLJ210694; (10) a Judgment entered by the San Mateo County Court Clerk on March 4, 2015, bearing case number CLJ210694; and (11) an Order and Notice of Dismissal for Failure to Comply entered on March 23, 2015, with the United States Bankruptcy Court bearing bankruptcy case number 15-30294. (RJN, ECF No. 36; Errata, ECF No. 47.)

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A "high degree of indisputability is the essential prerequisite" to taking judicial notice and "the tradition [of taking judicial notice] has been one of caution in requiring that the matter be beyond reasonable controversy." Fed. R. Evid. 201(a) & (b)

United States District Court
Northern District of California

on the Deed of Trust. (RJN, ECF No. 36, Ex. 1.) And Paragraph 13 of the Deed of Trust states in relevant part: "[A]ny Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument." (*Id.*)

Sometime thereafter, CMC became the servicer of the loan, and Deutsche Bank became the beneficiary under the Deed of Trust. (FAC ¶ 28.)

Then, in June 2013, the Tregres each died. (*Id.* ¶ 29.) As a result, pursuant to the terms of the Trust, title to the Property was conveyed to Ms. Green. (*Id.* ¶ 30.) She alleges that "[b]y virtue of her parent[s'] death[s], [she] received title to the [P]roperty and assumed the [L]oan." (*Id.* ¶ 34.) She also alleges that she "became the trustor under the Deed of Trust by virtue of her parent[s'] death[s]." (*Id.* ¶ 35.)

Ms. Green made payments on the loan from July 2013 to September 2013, but thereafter the loan fell into default after Ms. Green's daycare business closed that summer and she suffered a loss of income. (*Id.* ¶ 31.) In September 2013, Ms. Green contacted CMC. She told CMC that her parents had died and that she had obtained title to the Property. (*Id.* ¶ 32, 33.) She also told CMC that she wished to inquire about a loan modification. (*Id.* ¶ 32.)

CMC never questioned Ms. Green's ability to apply for a loan modification, and it asked her to send various documents to be considered for one. (*Id.* ¶¶ 39, 40.) No one at CMC, however, discussed loss mitigation options with her, whether in person or by telephone, about how to save her home. (*Id.* ¶ 40.)

In December 2013 and early January 2014, Ms. Green sent to CMC all of the documents it requested so she could be considered for a loan modification. (*Id.* ¶ 42.) CMC acknowledged

advisory committee's notes (emphasis added). A court, then, may take judicial notice of undisputed facts contained in public records, but it may not take judicial notice of disputed ones. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also Muhammad v. California*, C-10-1449-SBA, 2011 WL 873151, at *4 (N.D. Cal. Mar. 11, 2011) (denying request for judicial notice of an address contained on a complaint filed in another case because the "underlying facts relevant to Plaintiff's residence are disputed and otherwise do not meet the requirements of Rule 201"). Here, Ms. Green does not object to the court taking judicial notice of the existence of these documents, all of which are public records. Therefore, the court takes judicial notice of them. The court does not take judicial notice of the documents submitted by Ms. Green, however, as they are not necessary to the court's ruling. (*See* Plaintiff's RJN, ECF No. 42.)

receiving the documents and that her application was under review. (*Id.* ¶ 41.) CMC subsequently denied her application on the basis that it had not received all of the documents it requested. (*Id.* ¶ 42.) Even though Ms. Green sent her bank statements in, CMC claimed that it had not received them. (*Id.*) CMC denied Ms. Green's loan modification application on this basis. (*Id.*)

In mid-March 2014, Ms. Green received a notice of default in the mail at the Property. (*Id.* ¶ 43.) She had not previously received written denial of her loan modification application on the merits. (*Id.*) Prior to the notice of default being recorded, Ms. Ms. Green also had never been able to speak with a CMC representative, whether in person or by telephone, regarding her options to avoid foreclosure. (*Id.*)

In late June 2014, CMC acknowledged that they received all necessary documents to consider Ms. Green for a loan modification. (*Id.* ¶ 44.) CMC subsequently denied her loan modification application because she had insufficient income. (*Id.* ¶ 45.) CMC's denial letter, however, made no mention of what her gross income was. (*Id.*) Ms. Green alleges that this denial was improper because she had sufficient income pursuant to federal guidelines and thus should have been approved for a loan modification. (*Id.*) Her income was approximately $3,400 per month, and her children pledged to contribute $2,300 toward the payments. (*Id.*)

Ms. Green then sent CMC documentation showing that the amount it calculated for her gross income was "significantly inaccurate." (*Id.* ¶ 46.) She also spoke with CMC's representatives regarding her income. (*Id.*) CMC then sent a letter stating that Ms. Green's appeal was denied because she had not provided it with updated income information. (*Id.* ¶ 47.) But she had in fact sent them documents showing additional income. (*Id.*)

On September 12, 2014, Ms. Green filed a voluntary Chapter 13 bankruptcy petition. (*Id.* ¶ 48.) It turns out that the Property was scheduled to be sold at a trustee's sale that same day. (*Id.*) Ms. Green was not aware of this at the time. (*Id.*) Although she knew a sale date was coming up, she did not know that it was September 12. (*Id.*)

Several weeks later, Ms. Green received a trustee's deed upon sale in the mail and learned that Deutsche Bank had purchased her Property. (*Id.* ¶ 49; RJN, ECF No. 36, Ex. 7.)

United States District Court
Northern District of California

## II. PROCEDURAL HISTORY

Ms. Green, proceeding pro se, filed her original complaint in this action on September 23, 2014. (Complaint, ECF No. 1.) After several extensions of time to serve the defendants, Ms. Green retained counsel and filed a First Amended Complaint on June 24, 2015. (FAC, ECF No. 22.) She brings the following 12 claims: (1) violation of California's Homeowners Bill of Rights ("HBOR"), Cal. Civ. Code § 2923.55; (2) violation of HBOR, Cal. Civ. Code § 2923.6; (3) violation of HBOR, Cal. Civ. Code § 2923.7; (4) violation of HBOR, Cal. Civ. Code § 2924.17; (5) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f); (6) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d)(1); (7) negligent misrepresentation; (8) fraud; (9) wrongful foreclosure; (10) unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (11) cancellation of deed; and (12) declaratory relief. (*Id.* ¶¶ 63-130.)

PLM was declared to have nonmonetary status, and the remaining defendants CMC and Deutsche Bank filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Motion, ECF No. 35; Stipulation and Order, ECF No. 45.) Ms. Green filed an opposition, and the defendants filed a reply. (Opposition, ECF No. 43; Reply, ECF No. 48.)

### ANALYSIS

As a threshold matter, the defendants argue that Ms. Green does not have standing to assert any of her claims. (Motion, ECF No. 35 at 12-15.) Technically, the defendants—who bring a motion under Rule 12(b)(6)—must raise the standing issue under Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The court nonetheless must address jurisdictional issues such as standing sua sponte. *D'Lil v. Best Western*, 538 F.3d 1031, 1035 (9th Cir. 2008).

A defendant may mount either a facial or a factual challenge to the court's jurisdiction. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 n. 3 (9th Cir. 2014) (citing *Safe Air for*

United States District Court
Northern District of California

*Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). When a defendant mounts a facial attack, the court must "accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In contrast, when presented with a factual challenge to subject matter jurisdiction, the court may evaluate extrinsic evidence and resolve factual disputes when necessary. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). In a factual challenge, the plaintiff "bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Harris v. Rand*, 682 F.3d 846, 850-51 (9th Cir. 2012)). Dismissal of a complaint without leave to amend should be granted only where the jurisdictional defect cannot be cured by amendment. S*ee Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Ms. Green has the burden of establishing Article III standing. *Colwell v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). To meet that burden, she "must establish 'the irreducible constitutional minimum of standing,' consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To establish an injury in fact, she must show that she has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

From the face of the complaint, Ms. Green brings this action on her own behalf. (*See generally* FAC, ECF No. 22.) Generally, "[a] person who is not a party to a contract does not have standing either to seek its enforcement or to bring tort claims based on the contractual relationship." *Ambers v. Wells Fargo Bank, N.A.*, No. 13-cv-03940 NC, 2014 WL 883752, at *4 (N.D. Cal. Mar. 3, 2014) (citing *Mega Life & Health Ins. Co. v. Super. Ct.*, 172 Cal. App. 4th 1522, 1528-32 (Cal. Ct. App. 2009)). Courts thus have dismissed foreclosure-based claims—like Ms. Green's negligent misrepresentation, fraud, wrongful foreclosure, UCL, cancellation of deed, and declaratory relief claims—by persons who were not parties to mortgage loans. *See also*, *e.g.*,

*Cabrera v. Countrywide Fin.*, No. C 11-4869 SI, 2012 WL 5372116, at *8 (N.D. Cal. Oct. 30, 2012) (even though the plaintiff had community property rights in her home, the plaintiff lacked standing to bring civil RICO, ECOA, and UCL claims because she was not a signatory to the loan); *Thomas v. Guild Mortg. Co.*, No. CV 09-2687-PHX-MHM, 2011 WL 676902, at *4 (D. Ariz. Feb. 23, 2011) (because it was the plaintiff's daughter—and not the plaintiff—who was a party to the loan, the plaintiff lacked standing to bring TILA, RESPA, Home Ownership and Equity Protection Act, and civil RICO claims arising from the defendant's foreclosure on property securing that loan); *Brockington v. J.P. Morgan Chase Bank, N.A.*, No. C-08-05795 RMW, 2009 WL 1916690, at *2-3 (N.D. Cal. July 1, 2009) (even though the plaintiff alleged that she was an "equitable owner" of property, the plaintiff did not have standing to challenge the defendant's conduct in connection with that loan because the plaintiff was not a party to the loan); *Cleveland v. Deutsche Bank Nat'l Trust Co.*, No. 08cv0802 JM(NLS), 2009 WL 250017, at *2 (S.D. Cal. Feb. 2, 2009) (because the plaintiff's wife—and not the plaintiff—was the "borrower" on the loan, the plaintiff did not have standing to assert claims for violation of TILA, injunctive relief, statutory damages, fraud, accounting, cancellation of instruments, quiet title, and declaratory relief based on the defendants' foreclosure on property securing that loan).

Similarly, only "borrowers" have standing to assert claims for violation of HBOR. *See* Cal. Civ. Code § 2924.12(a)(1), (b); Cal. Civ. Code § 2924.19(a)(1), (b); *see also Lindberg v. Wells Fargo Bank, N.A.*, No. C 14-2544 PJH, 2015 WL 1137634, at *5-6 (N.D. Cal. Mar. 13, 2015) (because "only 'borrowers' have HBOR standing," the court dismissed the non-borrower plaintiff's claims for violation of California Civil Code §§ 2923.6 and 2923.7); *Van Zandt v. Select Portfolio Serv., Inc.*, No. C-15-0430 MMC, 2015 WL 574357, at *2 (N.D. Cal. Feb. 10, 2015) ("The protections provided under § 2923.7 are available only to a 'borrower, . . .'"); *Austin v. Ocwen Loan Serv., LLC*, No. 14-cv-00970 JAM-AC, 2014 WL 3845182, at *2-3 (E.D. Cal. Aug. 1, 2014) ("because Plaintiff is not the borrower, she is not the real party in interest for her HBOR claim" under California Civil Code § 2924.11; dismissing claim).

And only "borrowers" have standing to assert the RESPA claims that Ms. Green asserts here. *See* 12 U.S.C. § 2605; 12 C.F.R. § 1024.41(b)(2)(i), (f)(2). Indeed, the regulation Ms. Green cites

ORDER (No. 3:14-cv-04281-LB)

7

in her First Amended Complaint states that "[a] borrower may enforce the provisions of this section pursuant to [12 U.S.C. § 2605(f)]." 12 C.F.R. § 1024.41(a). For this reason, courts have dismissed RESPA claims asserted by those who are not borrowers. *See Aldana v. Bank of Am., N.A.*, No. CV 14-7489-GHK (FFMx), 2014 WL 6750276, at *3 (C.D. Cal. Nov. 26, 2014) (dismissing RESPA claim where the plaintiff was not a borrower, did not assume obligations under the loan, and was not a third-party beneficiary under the deed of trust when the borrower signed it); *Stolz v. OneWest Bank*, No. 03:11-cv-00762-HU, 2012 WL 135424, at *5 (D. Or. Jan. 13, 2012) (dismissing two plaintiffs' RESPA claims because, as non-borrowers, they "lack[ed] standing to bring a RESPA claim because they were not entitled to receive any disclosures or responses under RESPA); *Mashburn v. Wells Fargo Bank, NA*, No. C11-0179-JCC, 2011 WL 2940363, at *3 (W.D. Wash. July 19, 2011) ("Plaintiff Hayakawa also does not have standing to bring the RESPA . . . claims since he was not a borrower and did not apply for a loan. . . . and thus was not entitled to receive any disclosures or responses from Defendant under RESPA."); *see also Johnson v. Ocwen Loan Serv.*, 374 Fed. App'x 868, 873-74 (11th Cir. Mar. 15, 2010) (affirming the district court's dismissal of, among others, the plaintiff's RESPA claim because the plaintiff "was not a borrower or otherwise obligated on the Ocwen loan and, therefore, did not suffer an injury-in-fact"; noting that 12 U.S.C. § 2605(f) provides that "[w]hoever fails to comply with any provision of this section shall be liable *to the borrower* for each such failure") (italics in original).

In her First Amended Complaint, Ms. Green alleges that "[b]y virtue of her parent[s'] death[s], [she] received title to the [P]roperty and assumed the [L]oan" and therefore became the "borrower." (FAC ¶¶ 34, 69.) This is a statement of law, not fact, and she cites no authority that supports it. Indeed, her allegation is directly at odds with Paragraph 13 of the Deed of Trust, which states that "any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument." (RJN, ECF No. 36, Ex. 1 (emphasis added).)  Other courts have found that a successor in interest does not assume a borrower's obligations simply upon obtaining title to property when the deed of trust requires an assumption be made in writing and approved by the lender. *See Layton v. Ocwen Loan Serv., LLC*,

No. EDCV 15-840-GW(Ex), 2015 WL 4512015, at *4 (C.D. Cal. July 23, 2015); *Robertson v. GMAC Mortg. LLC*, 982 F. Supp. 2d 1202, 1207 (W.D. Wash. 2013); *Anolik v. Bank of Am. Loans*, No. 2:11-cv-00406-MCE-JFM, 2011 WL 1549291, at *1, *3 (E.D. Cal. Apr. 21, 2011); *see also Gonzalez on Behalf of Estate of Perez, v. JP Morgan Chase Bank, N.A.*, No. C-14-2558 EMC, 2014 WL 5462550, at *3 (N.D. Cal. Oct. 28, 2014) ("The execution of the quitclaim deed by Ms. Perez in favor of Ms. Gonzalez and Ms. Gonzalez's daughter does not confer standing as to allegations concerning loan origination. Ms. Gonzalez has not shown that she had any obligation on the loan. Therefore she has failed to show a cognizable injury flowing from the loan origination.") (collecting cases). Accordingly, the court rejects Ms. Green's argument that she, as a successor in interest, is the "borrower" under the Deed of Trust.

Ms. Green also lacks standing to assert her ECOA claim. 15 U.S.C. § 1691(d)(1), the subsection she alleges the defendants violated, states: "Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." "Credit" is defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). And an "applicant" is defined as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b).

Although Ms. Green was an applicant within the meaning of ECOA, she did not apply for a new extension of credit, and she could not have applied for a renewal or continuation of credit because the defendants had not previously extended her credit. What she applied for was a modification of the Trust's obligations under the Loan or Deed of Trust. Her application had no effect on any existing obligations she had under the Loan or Deed of Trust, because she had none. As the court explained above, she did not assume any obligations under the Deed of Trust. In this circumstance, the court does not believe that Ms. Green has shown that she, individually (as opposed to the Tregres' estate or the Trust), suffered an injury-in-fact—"an invasion of a legally

protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"—that confers her with standing to assert an ECOA claim. *Lujan*, 504 U.S. at 560. And Ms. Green has not cited, and the court has not found, any court holding otherwise in such a circumstance.

## CONCLUSION

For the reasons stated above, the court concludes that Ms. Green has not established that she has standing to assert her claims on her own behalf. The court thus grants the defendants' motion and dismisses Ms. Green's First Amended Complaint without prejudice.[3] Ms. Green may file a Second Amended Complaint by September 23, 2015. Upon amendment, if Ms. Green attempts to assert claims on behalf of the Tregres' estate or the Trust, she must allege specific facts showing her capacity to do so. *See Gonzalez*, 2014 WL 5462550, at *3; *Evans v. Wells Fargo Bank, N.A.*, No.: 13-cv-2371 JSC, 2013 WL 4049062, at *2 (N.D. Cal. Aug. 8, 2013).

**IT IS SO ORDERED.**

Dated: September 2, 2015

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

---

[3] Because standing is a jurisdictional prerequisite, the court does not reach the defendants' other arguments at this time. (*See* Motion, ECF No. 35 at 15-29.) If Ms. Green files a Second Amended Complaint and successfully establishes her standing, the defendants may raise their additional arguments at that time.