1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT
9                          NORTHERN DISTRICT OF CALIFORNIA
10                                San Francisco Division
11

12    ANGELIA GREEN,                          Case No. 3:14-cv-04281-LB
                    Plaintiff,
13                                            **ORDER GRANTING IN PART AND**
             v.                               **DENYING IN PART THE**
14                                            **DEFENDANTS' MOTION TO DISMISS**
      CENTRAL MORTGAGE COMPANY, et            **THE SECOND AMENDED**
15    al.,                                    **COMPLAINT**

16                  Defendants.               [Re: ECF No. 55]

17                                   **INTRODUCTION**

18          The three plaintiffs—Angelia Green in both her individual capacity and her capacity as trustee

19    of the Robert J. Tregre Jr. & Rosia L. Tregre Family Revocable Living Trust ("the Trust"), and the

20    Trust itself—sued three defendants—Central Mortgage Company ("CMC"), PLM Loan

21    Management Services, Inc. ("PLM"), and Deutsche Bank National Trust Company as Trustee for

22    Harborview Mortgage Loan Trust 2007-2 ("Deutsche Bank")—for violating federal and California

23    law in relation to the denial of her loan modification applications and the foreclosure on her home.

24    (Second Amended Complaint ("SAC"), ECF No. 54.[1]) The court approved the parties' stipulation

25    that PLM has non-monetary status pursuant to California Civil Code § 2924l and does not have to

26    participate as a party to this action at this time. (Stipulation and Order, ECF No. 45.) CMC and

27    _____

28    [1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to
      the ECF-generated page numbers at the tops of the documents.

      ORDER (No. 3:14-cv-04281-LB)

Deutsche Bank now have moved to dismiss Ms. Green's Second Amended Complaint (Motion, ECF No. 55.) Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument. The court grants in part and denies in part their motion.

## STATEMENT

### 1.   The Plaintiffs' Allegations

In 1977, Ms. Green's parents, Robert Tregre and Rosia Tregre (the "Tregres"), purchased property at 823 Templeton Avenue, Daly City, California 94104 (the "Property"). (SAC, ECF No. 54, ¶¶ 3, 14, 24.) On September 15, 2006, the Tregres created the Robert J. Tregre & Rosia L. Tregre Family Revocable Living Trust (the "Trust"), and they placed the Property into it. (*Id.* ¶¶ 5, 27-28.) Upon the death of the Tregres, all of the Trust's assets—including the Property—were to be distributed to Ms. Green, the Trust's beneficiary. (*Id.* ¶ 29.)

On January 11, 2007, the Trust entered into a refinance loan transaction (the "Loan") and secured the Loan with the Property through a deed of trust (the "Deed of Trust"). (*Id.* ¶ 34; Request for Judicial Notice ("RJN"), ECF No. 36, Ex. 1.) The Trust was listed as the "borrower" on the Deed of Trust. (RJN, ECF No. 56, Ex. 1.) And Paragraph 13 of the Deed of Trust states in relevant part: "[A]ny Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument." (*Id.*)

Sometime thereafter, CMC became the servicer of the Loan, and Deutsche Bank became the beneficiary under the Deed of Trust. (SAC, ECF No. 54, ¶ 34.)

Then, in June 2013, the Tregres each died. (*Id.* ¶ 35.) As a result, pursuant to the terms of the Trust, title to the Property was conveyed to Ms. Green. (*Id.* ¶¶ 29, 36, 40.) Ms. Green then "automatically became the trustee" of the Trust. (*Id.* ¶¶ , 30-31, 41.) The plaintiffs allege that, according to the Trust,

> the trustee's powers include, but are not limited to: The power to sell [T]rust property, and to borrow money and to encumber property, specifically including [T]rust real estate, by mortgage, deed of trust, or other method . . . The power to manage [T]rust real estate as if the trustee were the absolute owner of it, including the power to lease (even if the lease term may extend beyond the period of any

United States District Court
Northern District of California

trust) or grant options to lease the property, to make repairs or alterations and to insure against loss . . . The power to employ and pay reasonable fees to accountants, lawyers or investment experts for information or advice relating to the [T]rust . . . The power to continue any business of either grantor . . . The power to execute any documents necessary to administer any trust created in this Declaration of Trust . . . [and] The power to institute or defend legal actions concerning the [T]rust or the grantors' affairs.

(*Id.* ¶ 32.) At that point, Ms. Green "was authorized to act on behalf of the [T]rust immediately upon her parents' passing," including by "making payments on the . . . [L]oan and applying for loss mitigation opportunities on behalf of" the Trust. (*Id.* ¶ 42.)

"The [p]laintiffs" thereafter made three payments on the Loan from July 2013 to September 2013, but thereafter the Loan fell into default after Ms. Green's daycare business closed that summer and she suffered a loss of income. (*Id.* ¶¶ 37, 43.) CMC and Deutsche Bank accepted all three of these payments. (*Id.* ¶ 43.)

In September 2013, Ms. Green contacted CMC about a loan modification. (*Id.* ¶ 38.) She informed CMC that both of her parents died and that she had obtained title to the Property. (*Id.* ¶ 38-39.) She also told CMC that she wished to inquire about a loan modification. (*Id.* ¶ 38.) She subsequently sent CMC the Trust documents. (*Id.* ¶ 39.)

CMC never questioned Ms. Green's ability to apply for a loan modification, and it asked "the [p]laintiffs" to send various documents to be considered for one. (*Id.* ¶¶ 44-45.) No one at CMC, however, discussed "loss mitigation options" with "the [p]laintiffs," whether in person or by telephone, about how to save the home. (*Id.* ¶ 45.)

In December 2013 and early January 2014, Ms. Green sent to CMC all of the documents it requested to be considered for a loan modification. (*Id.* ¶ 47.) CMC acknowledged receiving the "documents to be considered for a loan modification" and also acknowledged that Ms. Green's application was "under review." (*Id.* ¶ 46.) CMC subsequently denied her application on the basis that it had not received all of the documents it requested. (*Id.* ¶ 47.) Even though Ms. Green sent her bank statements, CMC claimed that it had not received them. (*Id.*) CMC denied Ms. Green's loan modification application on this basis. (*Id.*)

On January 24, 2014, CMC sent "the [p]laintiffs" a letter addressed to the "Mortgagor" and which thanked the "Mortgagor" "for contacting us about your mortgage." (*Id.* ¶ 48.) The letter

1    stated that the "Mortgagor" was ineligible to receive a loan modification because the loan

2    modification application packet was incomplete. (*Id.*) "The [p]laintiffs," though, "had already sent

3    in all requested information." (*Id.*)

4        On March 7, 2014, PLM recorded a Notice of Default stating that the Trust was $19,910.59 in

5    arrears on the Loan. (RJN, Ex. 4, ECF No. 56-1 at 28-31.) Exhibit A to the Notice of Default is a

6    "Declaration Per CA Civil Code Section 2923.5(c)." (RJN, Ex. 4, ECF No. 56-1 at 31.) It states

7    that the mortgage servicer, CMC, "was unable to make contact with the Borrower" but that "the

8    following efforts were made":

9        [x] Sent a First-Class letter to Borrower's last known mailing address advising
        Borrower (a) that Borrower is in default under the Loan, (b) that Borrower should
10       contact Servicer regarding alternative options to avoid foreclosure, (c) of Servicer's
        toll-free number with access to a live representative during Servicer's business
11       hours, (d) of a toll-free number to a HUD certified counseling agency, and € that
        Borrower's failure to contact Servicer may result in commencement of a foreclosure
12       action;

13       [x] Attempted to contact Borrower by telephone at least 3 times at 3 different hours
        on 3 different days at the primary telephone number on file;
14

15       [x] Two weeks after last telephone contact was completed and no contact having
        been made, Servicer sent a letter via Certified Mail Return Receipt Requested to
16       Borrower's last known mailing address advising Borrower (a) that Borrower is in
        default under the Loan, (b) that Borrower should contact Servicer regarding
17       alternative options to avoid foreclosure, (c) of Servicer's toll-free number with
        access to a live representative during Servicer's business hours, (d) of a toll-free
18       number to a HUC certified counseling agency, and € that Borrower's failure to
        contact Servicer within 30 days of receipt of this letter will result in commencement
        of a foreclosure action.
19

20   (RJN, Ex. 4, ECF No. 56-1 at 31.)

21       Ms. Green received the Notice of Default in the mail at the Property in mid-March 2014.

22   (SAC, ECF No. 54, ¶ 49.) She had not previously received written denial of her loan modification

23   application "on the merits." (*Id.*) Before the Notice of Default was recorded, Ms. Green had never

24   been able to speak with a CMC representative, whether in person or by telephone, regarding her

25   options to avoid foreclosure. (*Id.*)

26       On June 12, 2014, PLM recorded a Notice of Trustee's Sale. (RJN, Ex. 5, ECF No. 56-1 at 33-

27   34.)

28       In late June 2014, CMC acknowledged that it received all necessary documents to consider the

ORDER (No. 3:14-cv-04281-LB)                                                                    4

"[p]laintiffs" for a loan modification. (SAC, ECF No. 54, ¶ 50.) And on June 26, 2014, CMC thanked the "[p]laintiffs" for their "timely submission of your Borrower Response Package." (*Id.* ¶ 51.) On July 1, 2014, CMC sent the "[p]laintiffs" another letter thanking them for submitting a borrower response package and requesting addition information. (*Id.* ¶ 52.)

CMC subsequently denied the "[p]laintiffs'" loan modification application "on the basis of insufficient income." (*Id.* ¶ 53.) CMC's "denial letter," however, made no mention of what her gross income was. (*Id.*) The plaintiffs allege that this denial was improper because Ms. Green and her family had sufficient income pursuant to federal guidelines and thus should have been approved for a loan modification. (*Id.*) Her income was approximately $3,400 per month, and her children pledged to contribute $2,300 toward the payments. (*Id.*)

The "[p]laintiffs" apparently appealed CMC's decision, (*see id.* ¶ 55), because on August 28, 2014, CMC sent Ms. Green a letter denying the appeal. (*Id.*) The denial letter was addressed to "Borrower." (*Id.*) Ms. Green was the only natural person who communicated with CMC about a loan modification. (*Id.*)

"Thereafter, Ms. Green filed a consumer complaint." (*Id.* ¶ 56.)

Ms. Green then sent CMC documentation showing that the amount it calculated for her gross income was "significantly inaccurate." (*Id.* ¶ 57.) She also spoke with CMC's representatives regarding her income. (*Id.*) CMC then sent a letter stating that the "[p]laintiffs'" appeal was denied because they had not provided it with updated income information. (*Id.* ¶ 58.) But the "[p]laintiffs" had in fact sent CMC documents showing additional income. (*Id.*)

On September 12, 2014, Ms. Green, proceeding pro se, filed a voluntary Chapter 13 bankruptcy petition. (*Id.* ¶ 59.) It turns out that the Property was scheduled to be sold at a trustee's sale that same day. (*Id.*) Ms. Green was aware that a sale date was coming up, but she did not know it was scheduled to take place on September 12. (*Id.*)

On September 23, 2014, PLM recorded a Trustee's Deed upon Sale stating that Deutsche Bank purchased the property for $685,000 at a trustee's sale held on September 12, 2014. (RJN, Ex. 7, ECF No. 56-1 at 38-40.)

On October 13, 2014, CMC "sent a letter in response to [Ms. Green's] consumer complaint."

(SAC, ECF No. 54, ¶ 60.) In the letter, CMC stated that Ms. Green "was now authorized to take action relative to our borrowers' account." (*Id.*) The plaintiffs allege that this letter is "factually incorrect" because Ms. Green sent CMC information about her parents' deaths and the Trust the previous year. (*Id.*) (In other words, the plaintiffs believe that Ms. Green had been authorized to take action with respect to the Loan and the Property much earlier than CMC stated.) Notwithstanding this new "authorization," CMC "obviously had been permitting Ms. Green to negotiate a loan modification application with [it] the entire time." (*Id.*) It "treated [her] as an authorized representative on the account," "accepted payments from her for the [L]oan," and "even communicated to a third party regulator that [she] was authorized to take action on the account." (*Id.* ¶ 62.)

Several weeks later, Ms. Green received the Trustee's Deed upon Sale in the mail and learned that Deutsche Bank purchased her Property. (*Id.* ¶ 61.)

As Ms. Green did not have the help of legal counsel, her bankruptcy cases were dismissed. (*Id.* ¶ 66.) The bankruptcy court's September 23, 2014 "Order and Notice of Dismissal for Failure to Comply" states that Ms. Green failed to comply with the bankruptcy court's September 15, 2014 "Notice of Failure of Debtor(s) to Provide Statement of Social Security Number and/or List of Creditors." (RJN, Ex. 8, ECF No. 56-1 at 42-43.)

Ms. Green "subsequently learned that Deutsche Bank obtained an [unlawful detainer] judgment against her." (SAC, ECF No. 54, ¶ 67.) Deutsche Bank filed the unlawful detainer action against Ms. Green (in her individual capacity) in San Mateo County Superior Court on January 29, 2015. (RJN, Ex. 9, ECF No. 56-1 at 45-62.) On March 4, 2015, pursuant to California Code of Civil Procedure § 1169, the San Mateo County Superior Court Clerk issued a default judgment against Ms. Green for possession of the Property. (RJN, Ex. 10, ECF No. 56-1 at 64-67.) Ms. Green was evicted from the Property on April 23, 2015, but she was let back into it on May 7, 2015. (SAC, ECF No. 54, ¶¶ 68-69.)

## 2. Procedural History

Ms. Green, in her individual capacity only, filed her original complaint in this action on September 23, 2014. (Complaint, ECF No. 1.) At that time, she was proceeding pro se. After

ORDER (No. 3:14-cv-04281-LB)

6

United States District Court
Northern District of California

several extensions of time to serve the defendants, Ms. Green retained counsel and filed a First Amended Complaint on June 24, 2015. (FAC, ECF No. 22.) PLM was declared to have nonmonetary status, and CMC and Deutsche Bank filed a motion to dismiss. (Motion, ECF No. 35; Stipulation and Order, ECF No. 45.) The court granted the defendants' motion on the ground that Ms. Green lacked standing in her individual capacity to bring the action and granted her leave to file an amended complaint. (9/2/2015 Order, ECF No. 53.)

Ms. Green filed a Second Amended Complaint on September 23, 2015. (SAC, ECF No. 54.) She brings the following 12 claims: (1) violation of California's Homeowners Bill of Rights ("HBOR"), Cal. Civ. Code § 2923.55; (2) violation of HBOR, Cal. Civ. Code § 2923.6; (3) violation of HBOR, Cal. Civ. Code § 2923.7; (4) violation of HBOR, Cal. Civ. Code § 2924.17; (5) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f); (6) violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d)(1); (7) negligent misrepresentation; (8) fraud; (9) wrongful foreclosure; (10) unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (11) cancellation of deed; and (12) declaratory relief. (*Id.* ¶¶ 74-140.)

CMC and Deutsche Bank again filed a motion to dismiss. (Motion, ECF No. 55.)

## ANALYSIS

### 1. The Defendants' Request for Judicial Notice

To begin, the court addresses the defendants' request for judicial notice. (*See* RJN, ECF No. 56.) The defendants ask the court to take judicial notice of the following 14 documents: (1) a Deed of Trust recorded on January 22, 2007, in the San Mateo County Recorder's Office bearing instrument number 2007-009851; (2) an Assignment of Deed of Trust recorded March 4, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014-017912; (3) a Substitution of Trustee recorded March 4, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014-017913; (4) a Notice of Default recorded March 7, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014-019210; (5) a Notice of Trustee's Sale recorded June 12, 2014, in the San Mateo County Recorder's Office bearing instrument number 2014-051353; (6) an Assignment of Deed of Trust recorded September 23,

1    2014, in the San Mateo County Recorder's Office bearing instrument number 2014-086030; (7) a

2    Trustee's Deed Upon Sale recorded September 23, 2014, in the San Mateo County Recorder's

3    Office bearing instrument number 2014-086031; (8) an Order and Notice of Dismissal for Failure

4    to Comply entered on September 23, 2014 with the United States Bankruptcy Court bearing

5    bankruptcy case number 14-31336-HLB 13; (9) a Verified Complaint filed on January 29, 2015,

6    with the San Mateo County Court bearing case number CLJ210694; (10) a Judgment entered by

7    the San Mateo County Court Clerk on March 4, 2015, bearing case number CLJ210694; (11) an

8    Order and Notice of Dismissal for Failure to Comply entered on March 23, 2015 by the United

9    States Bankruptcy Court for the Northern District of California, bearing bankruptcy case number

10   15-30294; (12) a Voluntary Petition filed on April 13, 2015 in United States Bankruptcy Court for

11   the Northern District of California, bearing bankruptcy case number 15-30454; (13) a Summary of

12   Schedules filed on May 8, 2015 in United States Bankruptcy Court for the Northern District of

13   California, bearing bankruptcy case number 15-30454; and (14) the Declaration of Nelson Goodell

14   filed on July 29, 2015 in this action. (*Id.*)

15         Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not

16   subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

17   jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

18   reasonably be questioned." Fed. R. Evid. 201(b). A "high degree of indisputability is the essential

19   prerequisite" to taking judicial notice and "the tradition [of taking judicial notice] has been one of

20   caution in requiring that the matter be beyond reasonable controversy." Fed. R. Evid. 201(a) & (b)

21   advisory committee's notes (emphasis added). A court, then, may take judicial notice of

22   undisputed facts contained in public records, but it may not take judicial notice of disputed ones.

23   *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also Muhammad v.*

24   *California*, C-10-1449-SBA, 2011 WL 873151, at *4 (N.D. Cal. Mar. 11, 2011) (denying request

25   for judicial notice of an address contained on a complaint filed in another case because the

26   "underlying facts relevant to Plaintiff's residence are disputed and otherwise do not meet the

27   requirements of Rule 201"). Here, Ms. Green objects to the court taking judicial notice "of the

28   truthfulness" of the documents, (Opposition, ECF No. 59 at 17), but she does not object to the

United States District Court
Northern District of California

ORDER (No. 3:14-cv-04281-LB)

8

court taking judicial notice of the existence of them, all of which are public records. Therefore, the court takes judicial notice of the existence of the documents but does not take judicial notice of the disputed facts contained with them.

This distinction is important. At several points in their motion the defendants argue that the plaintiffs' claims fail because the allegations are undermined by statements made in letters from CMC that are attached to the Declaration of Nelson Goodell. (*See* Motion, ECF No. 55 at 12, 21-22, 23, 24, 25). These letters are not judicially noticeable because they are not public records; they are private correspondence attached to a declaration which is a public record. The defendants provide no authority to support their implied argument that the letters themselves are judicially noticeable in this context. Moreover, the plaintiffs dispute the factual content of the letters. Because the letters that are attached as exhibits to the Declaration of Nelson Goodell are not judicially noticeable, and because the plaintiffs' complaint does not rely upon them, the court does not consider them at the motion-to-dismiss stage of the litigation. *See United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011) ("As a general rule, [a district court] 'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'") (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). This also means that the court does not consider the defendants' arguments that are based on them. The court therefore has omitted these arguments when analyzing the defendants' other arguments in the remainder of this order.

**2.   The Plaintiffs' Standing and the Real Party in Interest**

**2.1   The Trust Is Dismissed as a Plaintiff**

As an initial matter, the defendants move to dismiss the Trust itself as a plaintiff to this action. (Motion, ECF No. 55 at 15.) Under Federal Rule of Civil Procedure 17(a), a "[p]laintiff must be the 'real party in interest,' with respect to the claim sued upon." Schwarzer, Tashima & Wagstafe, Cal. Prac. Guide: Fed. Civ. P. before Trial, ¶ 7:1 (The Rutter Group 2015); *see Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006). Generally, for parties other than corporations or individuals not acting in a representative capacity, capacity to sue or be sued is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b). In California, a trust is not a legal entity and has no capacity to sue or be sued.

ORDER (No. 3:14-cv-04281-LB)

9

*Jordan v. Paul Fin., LLC*, 644 F. Supp. 2d 115, 1172 (N.D. Cal. 2009) (citing *Galdjie v. Darwish*, 113 Cal. App. 4th 1331, 1343-45 (2003); *see Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 522 (2010) ("A trust . . . is simply a collection of assets and liabilities. As such, it has no capacity to sue or be sued, or to defend an action.") (internal quotation marks omitted); *see also* Schwarzer, Tashima & Wagstafe, Cal. Prac. Guide: Fed. Civ. P. before Trial, ¶ 7:7 (The Rutter Group 2015).

Because the Trust does not have capacity to sue, the court dismisses it as a plaintiff from this action. *See Estate of Migliaccio*, 436 F. Supp. 2d at 1100-01 (granting the defendants' motion to dismiss because "as a matter of law, the Estate cannot be a plaintiff in this lawsuit" and "only the Estate's trustee, administrator or executor may bring suit on its behalf as the real party in interest"); *see also Tuttle v. Sky Bell Asset Mgmt., LLC*, No. C 10-03588 WHA, 2012 WL 440393, at *4 (N.D. Cal. Feb. 10, 2012) ("To avoid potential standing issues that may be raised as to the Trust's capacity to sue as a trust, plaintiffs were granted leave to amend their complaint to reflect that the Braun Family Trust would be suing by its co-trustee Mr. Braun.").

### 2.2   Ms. Green, in Her Individual Capacity, Is Dismissed as a Plaintiff

In its September 2, 2015 order, the court determined that Ms. Green lacked standing to bring her claims in her individual capacity (which was the only capacity in which she originally sued) because she was not a party to or "borrower" under the Loan or Deed of Trust and had no existing obligations under the Loan or Deed of Trust. (9/2/2015 Order, ECF No. 53 at 6-10.) The court noted that only "borrowers" have standing to assert HBOR or RESPA claims, (*id.* at 6-7), and the court rejected Ms. Green's argument that she had standing because she received title to the Property upon her parents' deaths and allegedly "assumed" the Loan, (*id.* at 8-9). The court noted that this argument was "directly at odds with Paragraph 13 of the Deed of Trust, which states that 'any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument <u>in writing</u>, <u>and is approved by Lender</u>, shall obtain all of Borrower's rights and benefits under this Security Instrument.'" (*Id.* at 8 (citing RJN, ECF No. 36, Ex. 1 (emphasis added)).) The court also noted that "[o]ther courts have found that a successor in interest does not assume a borrower's obligations simply upon obtaining title to property when the deed of trust requires an assumption be made in writing and approved by the lender." (*Id.* at 8-9 (citing *Layton v. Ocwen*

United States District Court
Northern District of California

1 | *Loan Serv., LLC*, No. EDCV 15-840-GW(Ex), 2015 WL 4512015, at *4 (C.D. Cal. July 23, 2015);

2 | *Gonzalez on Behalf of Estate of Perez, v. JP Morgan Chase Bank, N.A.*, No. C-14-2558 EMC,

3 | 2014 WL 5462550, at *3 (N.D. Cal. Oct. 28, 2014); *Robertson v. GMAC Mortg. LLC*, 982 F.

4 | Supp. 2d 1202, 1207 (W.D. Wash. 2013); *Anolik v. Bank of Am. Loans*, No. 2:11-cv-00406-MCE-

5 | JFM, 2011 WL 1549291, at *1, *3 (E.D. Cal. Apr. 21, 2011)).) In dismissing her claims, the court

6 | allowed Ms. Green leave to file a Second Amended Complaint and invited her to bring claims in

7 | her capacity as representative of the Trust. (*Id.* at 10.)

Ms. Green filed a Second Amended Complaint, and she sued the defendants in her capacity as

9 | the trustee of the Trust, but she also sued the defendants in her individual capacity again. (SAC,

10 | ECF No. 54, ¶ 7.) The defendants move to dismiss her in her individual capacity. (Motion, ECF

11 | No. 13-15.) In their motion the defendants raise the same factual and legal points raised previously

12 | and argue that nothing has changed. (*See id.*) They point out that Ms. Green still has not alleged

13 | that she entered into a written loan assumption agreement or that she was approved by the lender,

14 | so she never became the "borrower" under the Deed of Trust. (*Id.* at 15.) The defendants therefore

15 | ask the court to dismiss Ms. Green in her individual capacity for the same reasons the court did

16 | before.

17 | In opposition, the plaintiffs argue that Ms. Green has standing in her individual capacity

18 | because she lost title to the Property and thus was harmed. (Opposition, ECF No. 59 at 2-3, 5.) But

19 | this is the same argument that the court rejected the last time, and the court sees no reason to alter

20 | its conclusion. Also, the plaintiffs' argument that the defendants treated Ms. Green, in her

21 | individual capacity, as the borrower, even if true, does not turn her into the borrower under the

22 | Deed of Trust. As described above, Ms. Green could have assumed the Trust's obligations under

23 | the Deed of Trust only in writing and after approval by the lender. The plaintiffs have not alleged

24 | this.

25 | The plaintiffs also cite Federal Rule of Civil Procedure 17 and argue that Ms. Green, in her

26 | individual capacity, is a real party in interest. (*Id.* at 3-4.) Rule 17 requires that "[a]n action must

27 | be prosecuted in the name of the real party in interest" and provides that "a trustee of an express

28 | trust" "may sue in [his or her] own name[ ] without joining the person for whose benefit the action

is brought." Fed. R. Civ. P. 17(a)(1)(e). Citing *Estate of Migliaccio* and *County of Todd, Minn. v. Loegering*, the plaintiffs say this rule allows Ms. Green to sue in her own name *both* as an individual *and* as the trustee of the trust. (Opposition, ECF No. 59 at 3.)

The court is not persuaded by the plaintiffs' argument. First, Rule 17 says that a trustee may sue in his or her own name; it does not say that the trustee may sue in his or her own name both in an individual and a representative capacity. Rule 17 allows a trustee to sue in his or her own name without also having to name the trust itself as a plaintiff. Second, the cases the plaintiffs cite do not support their position. In *Estate of Migliaccio*, the court dismissed the estate itself as a plaintiff and granted leave to amend to add the estate's representative as a plaintiff. 436 F. Supp. 2d at 1100-01. And while the court did allow a beneficiary of the estate to sue in her individual capacity because she was an "interested person" for purposes of Article III standing, the court did not address any of the barriers to standing at issue here, namely, that Ms. Green was not a party to or "borrower" under the Loan or Deed of Trust and had no existing obligations under the Loan or Deed of Trust. *Loegering* featured a plaintiff who sued not in her individual capacity but in her capacity as trustee to a decedent's estate. 297 F.2d 470, 471-72 (8th Cir. 1961). This fact alone makes it inapposite.

Accordingly, the court dismisses Ms. Green, in her individual capacity, as a plaintiff to this action. To the extent that the defendants argue, with respect to any particular claim, that the claim fails insofar as Ms. Green brings it in her individual capacity (*see* Motion, ECF No. 55 at 19, 22, 24, 26, 28-29, 32), the court finds those arguments encompassed by the defendants' general standing argument and this ruling, and the court does not address them later in this order.

### 2.3   Ms. Green, in Her Capacity as Trustee of the Trust, Is the Real Part in Interest and Is the Proper Plaintiff

The defendants do not argue that Ms. Green, in her capacity as trustee of the Trust, lacks standing to sue them. The court therefore finds that Ms. Green, in her capacity as trustee of the Trust, has standing, is the real party in interest, and is the proper plaintiff to this action. As the only remaining plaintiff is Ms. Green in her capacity as trustee of the Trust, the court addresses the defendants' additional arguments with respect to her only in that capacity.

ORDER (No. 3:14-cv-04281-LB)

12

### 3. Res Judicata

The defendants argue that all of Ms. Green's claims are barred by California's res judicata, or claim preclusion, doctrine.[2] (Motion, ECF No. 55 at 15-16.) This doctrine "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002). "[I]f a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." *Id.* at 896-97.

The defendants bear the burden of showing that res judicata applies. *Vella v. Hudgins*, 20 Cal. 3d 251, 257 (1977) ("The burden of proving that the requirements for application of res judicata have been met is upon the party seeking to assert it as a bar or estoppel."). To meet this burden, the defendants must show that the following "prerequisite elements" are satisfied: (1) a claim raised in the present action is identical to a claim litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. *Boeken*, 48 Cal. 4th at 797. "Even if these threshold requirements are established, res judicata will not be applied 'if injustice would result or if the public interest requires that relitigation not be foreclosed.'" *Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065 (1998) (quoting *Consumers Lobby Against Monopolies v. Pub. Util. Comm'n*, 25 Cal. 3d 891, 902 (1979)).

The defendants have not met their burden. They say that Deutsche Bank's unlawful detainer action against Ms. Green in her individual capacity bars the claims that Ms. Green brings against CMC and Deutsche Bank here in her capacity as trustee of the Trust. (Motion, ECF No. 55 at 16.)

---

[2] While the United States Supreme Court uses the term "res judicata" to refer collectively to claim preclusion and issue preclusion, *see, e.g., Taylor v. Sturgell*, 553 U.S. 880, 892 (2008), the California Supreme Court generally uses the term "res judicata" to refer to claim preclusion, and the term "collateral estoppel" to refer to issue preclusion, *see Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010) (distinguishing between the two "aspects" that compose California law's preclusion doctrine). Here, the defendants raise only claim preclusion. (*See* Motion, ECF No. 55 at 15.)

ORDER (No. 3:14-cv-04281-LB)

*United States District Court*
*Northern District of California*

Even if the unlawful detainer action resulted in a final judgment on the merits, the defendants have not met their burden to show which of Ms. Green's claims are barred. Although a prior unlawful detainer action—which is a "summary proceeding ordinarily limited to resolution of the question of possession"— bars subsequent claims challenging the trustee's sale and the validity of the title, *see Malkoskie v. Option One Mortg. Corp.*, 188 Cal. App. 4th 968, 973-76 (2010), it "does not, however, necessarily bar actions which encompass 'activities not directly related with the conduct of the sale,'" *Elstner-Bailey v. N. Pac. Mortg. Corp.*, No. CV 10-07151 DDP (CWx), 2012 WL 2077190, at *2 n.1 (C.D. Cal. June 8, 2012) (citing *Vella*, 20 Cal. 3d at 256). Thus, when determining whether res judicata applies, the key question is whether the claim challenges the trustee's sale and the validity of title or whether it challenges other conduct. *Compare*, *e.g.*, *Dancy v. Aurora Loan Servs. LLC*, No. C 10-2602 SBA, 2011 WL 835787, at *6 (N.D. Cal. Mar. 4, 2011) ("In the instant case, all of Plaintiff's claims are based on the same primary right at issue in the unlawful detainer proceeding; namely, the alleged invalidity of the foreclosure sale."); *Castle v. Mortg. Elec. Registration Sys., Inc.*, No. EDCV 11-00538 VAP, 2011 WL 3626560, at *7 (C.D. Cal. Aug. 16, 2011) ("As in *Malkoskie*, Plaintiffs' claims here are based on the same primary right at issue in the unlawful detainer proceeding, i.e., the right to the Property. . . . The validity of the foreclosure process, trustee's sale, and Fannie Mae's acquisition of the Property were all encompassed by the Unlawful Detainer Action.") *with*, *e.g.*, *Helmer v. Bank of Am., N.A.*, No. CIV S-12-0733 KJM-GGH, 2013 WL 1192634, at *4 (E.D. Cal. Mar. 22, 2013) ("Because plaintiff's allegations do not challenge the validity of the foreclosure sale, plaintiff's claims are not estopped by the unlawful detainer action."); *Albizo v. Wachovia Mortg.*, No. 2:11-cv-02991 KJN, 2012 WL 1413996, at *4 (E.D. Cal. Apr. 20, 2012) ("Here, plaintiffs are not solely challenging the validity of the foreclosure sale; instead, plaintiffs are also challenging defendants' conduct (i.e., properly accounting for plaintiffs' loan payments, agreeing to a loan modification, etc.) that occurred before the foreclosure sale."); *Johannson v. Wachovia Mortg. FSB*, No. C 11-02822 WHA, 2011 WL 3443952, at *10 (N.D. Cal. Aug. 5, 2011) ("Here, plaintiff is not challenging the validity of the foreclosure sale; plaintiff is challenging defendant's conduct that occurred before the foreclosure sale."). The defendants never examine this issue in detail and appear to assume that all of Ms.

Green's claims are for "wrongful foreclosure." (*See* Motion, ECF No. 55 at 16.) The issue, however, is not as clear-cut as the defendants suggest.

The defendants also have not shown privity. The California Court of Appeals has explained that:

> The concept of privity for the purposes of res judicata or collateral estoppel refers to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is sufficiently close so as to justify application of the doctrine of collateral estoppel. This requirement of identity of parties or privity is a requirement of due process of law. Due process requires that the nonparty have had an identity or community of interest with, and adequate representation by, the party in the first action. The circumstances must also have been such that the nonparty should reasonably have expected to be bound by the prior adjudication.

*Citizens*, 60 Cal. App. 4th at 1069-70 (internal citations, quotation marks, and ellipses omitted). "Privity," moreover, "is not susceptible of a neat definition, and determination of whether it exists is not a cut-and-dried exercise." *Aronow v. LaCroix*, 219 Cal. App. 3d 1039, 1048 (1990). Indeed, "[w]hether someone is in privity with the actual parties requires close examination of the circumstances of each case." *Victa v. Merle Norman Cosmetics, Inc.*, 19 Cal. App. 4th 454, 464 (1993) (internal quotation marks and citation omitted).

The defendants contend, without citation to any legal authority, that "[p]rivity is satisfied here since [Ms.] Green was trustee of the Trust at the time of the [unlawful detainer] action (SAC ¶ 31) and CMC is the loan servicer for Deutsche Bank." (Motion, ECF No. 55 at 16.) This is the extent of their argument on this point. The defendants do not provide any authority for the critical point that a party, when sued in her individual capacity, is in privity with the Trust for which she is trustee. It is not obvious to the court that privity would exist in this situation, and without more, the court cannot conduct the "close examination" to determine if it does.

The court also notes the defendants' incongruous opinions about Ms. Green's two capacities. When discussing her standing, the defendants emphasized that her two capacities were entirely distinct. But when discussing privity, the defendants are quick to argue that her individual and representative capacities are one and the same. This vacillation suggests that the Trust, through Ms. Green as its trustee, may not "have had an identity or community of interest with, and

United States District Court
Northern District of California

1    adequate representation by, [Ms. Green, in her individual capacity,] in the first action" and may

2    not "reasonably have expected to be bound by the prior adjudication." *Citizens*, 60 Cal. App. 4th

3    at 1070.

4        On this record, then, the court concludes that Deutsche Bank's unlawful detainer action against

5    Ms. Green in her individual capacity does not bar the claims brings now in her capacity as trustee

6    of the Trust.

7    **4.   Judicial Estoppel**

8        Next, the defendants argue that all of the claims that Ms. Green brings in her individual

9    capacity should be precluded under the judicial estoppel doctrine. (Motion, ECF No. 55 at 17.

10   ("[Ms.] Green, individually, is also barred as a result of her prior bankruptcy filings.") Because the

11   court has dismissed Ms. Green in her individual capacity as a plaintiff to this action, the

12   defendants' judicial estoppel argument is moot.[3]

13   **5.   Tender**

14       The defendants also argue that all of Ms. Green's claims are barred because she did not allege

15   that she "tendered the debt owed by the Borrower under the Deed of Trust." (Motion, ECF No. 55

16   at 18 ("Absent tender, Plaintiffs' SAC is barred.").)

17       The California Court of Appeal, Sixth District, has summarized the so-called "tender rule":

18           Because the action is in equity, a defaulted borrower who seeks to set aside a
             trustee's sale is required to do equity before the court will exercise its equitable
19           powers. Consequently, as a condition precedent to an action by the borrower to set
             aside the trustee's sale on the ground that the sale is voidable because of

20

21   ─────────────────────────────
     [3] Were Ms. Green, in her individual capacity, still a plaintiff to this action, the court would be
22   reluctant to apply the judicial estoppel doctrine where Ms. Green never obtained a discharge and
     the bankruptcy court never confirmed a bankruptcy plan. *See Ah Quin v. Cnty. of Kauai Dep't of*
23   *Transp.*, 733 F.3d 267, 271 (9th Cir. 2013) ("In the bankruptcy context, the federal courts have
     developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit
24   from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel
     bars the action."); *Nissim v. Wells Fargo Bank, N.A.*, No. C 14-1128 CW, 2014 WL 4421384, at
25   *6-7 (N.D. Cal. Sept. 5, 2014); *Chancellor v. OneWest Bank*, No. C 12-01068, at *5-6 (May 22,
     2012); *Sannah v. Wells Fargo Bank, N.A.*, No. SACV 11-01920 DOC, 2012 WL 10423186, at *3-
26   4 (C.D. Cal. Mar. 19, 2012). And at least two courts in this district have concluded that the entry
     of an automatic stay, without more, does not constitute judicial "acceptance" of a debtor's prior
27   inconsistent position, a requirement for judicial estoppel. *See Boatright v. Aurora Loan Servs.*, No.
     C-12-00009 EDL, 2012 WL 2792415, at *2-6 (N.D. Cal. July 9, 2012); *Perez v. Wells Fargo*
28   *Bank, N.A.*, No. C-11-02279 JCS, 2011 WL 3809808, at *11-12 (N.D. Cal. Aug. 29, 2011); *see*
     *also Gottlieb v. Kest*, 141 Cal. App. 4th 110, 142-145 (2006).

     ORDER (No. 3:14-cv-04281-LB)

irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security. The rationale behind the rule is that if the borrower could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the borrower.

There are, however, exceptions to the tender requirement. Our review of the case law discloses four exceptions.

First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt.

Second, a tender will not be required when the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary. In such cases, it is deemed that the tender and the counter claim offset one another, and if the offset is equal to or greater than the amount due, a tender is not required.

Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale.

Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face.

*Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112-13 (2011) (internal quotation marks, citations, and brackets omitted).

The tender rule applies to equitable claims, such as claims to set aside a trustee's sale, to quiet title, to cancel an instrument, or for wrongful foreclosure, *see Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578-79 (1984) ("[The tender] rule is premised upon the equitable maxim that a court of equity will not order that a useless act be performed."), and to claims "implicitly integrated" with the foreclosure, *see id.* at 579 (citing *Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 121 (1971)). *Cf. Ukiru v. Fed. Home Loan Mortg. Corp.*, 602 Fed. App'x 395, 396 (9th Cir. 2015) (affirming the district court's dismissal of the plaintiff's equitable claims— including her claims to set aside the trustee's sale, to cancel the trustee's deed, to quiet title, and for wrongful foreclosure—due to her failure to allege credible tender); *Adesokan v. U.S. Bank, N.A.*, 582 Fed. App'x 672, 673 (9th Cir. July 2, 2014) ("The district court properly dismissed Adesokan's wrongful foreclosure, quiet title, cancellation of instruments, and fraud claims because Adesokan failed to allege facts showing tender in the amount of his indebtedness or that the foreclosure sale was void.") But the tender rule "has no application . . . where [a] plaintiff['s] lawsuit is not based on the premise of a defect in the giving of notice [of foreclosure] but on the statutory grounds laid out in HBOR, and seeks monetary damages." *Valbuena v. Ocwen Loan*

ORDER (No. 3:14-cv-04281-LB)

*Servicing, LLC*, 237 Cal. App. 4th 1267, 1273-74 (2015); *see id.* at 1273 ("Nothing in the language of HBOR suggests that a borrower must tender the loan balance before filing suit based on a violation of the requirements of the law.").

Moreover, "[b]ecause tender is an equitable concept, courts have held that '[w]hether Plaintiffs are required to tender is a matter of discretion left up to the Court,' and that 'failure to allege tender is not decisive at [the pleading] stage.'" *Bingham v. Ocwen Loan Servicing, LLC*, No.: 13-CV-04040-LHK, 2014 WL 1494005, at *7-8 (N.D. Cal. Apr. 16, 2014) (quoting *Storm v. Am.'s Servicing Co.*, No. 0911206, 2009 WL 3756629, at *6 (S.D. Cal. Nov. 6, 2009); *accord Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO (SHx), 2014 WL 4359193, at *8-9 (C.D. Cal. Sept. 3, 2014) (exercising discretion to decline to apply tender at pleadings stage); *Nguyen v. JP Morgan Chase Bank N.A.*, No. 12-4183, 2013 WL 2146606, at *6 (N.D. Cal. May 15, 2013) (same).

Here, Ms. Green brings a mix of equitable and non-equitable claims (including claims under HBOR), some of which challenge the foreclosure process and some of which relate to her loan modification efforts. The defendants, however, never attempt to explain how or why the tender rule applies to each claim; they just say that the entire Second Amended Complaint is barred. (*See* Motion, ECF No. 55 at 18; Reply, ECF No. 60 at 6.) This does not suffice, especially at the pleading stage, where application of the tender rule depends upon the equitable circumstances of the case. Accordingly, the court declines to dismiss the Second Amended Complaint because Ms. Green did not allege tender.

## 6. Claims

With the defendants' generally-applicable arguments resolved, the court now turns to the defendants' arguments about each of Ms. Green's claims.

### 6.1   HBOR – Cal. Civ. Code § 2329.55

In her first claim, Ms. Green alleges that the defendants violated California Civil Code § 2329.55 "by failing to contact Ms. Green, in person or by telephone, at least 30 days prior to recording the Notice of Default on March 7, 2014 and the Notice of Trustee's Sale on June 12, 2014 to explore the 'traditional' options for the Plaintiff to avoid foreclosure, such as a repayment plan, a forbearance agreement or a 'short sale,' despite the fact that Ms. Green was fully available

United States District Court
Northern District of California

1    to explore such options." (SAC, ECF No. 54, ¶ 75.); *see also* Cal. Civ. Code § 2923.55(a)(2) ("A

2    mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of

3    default pursuant to Section 2924 until . . . 30 days after initial contact is made as required by

4    paragraph (2) of subdivision (b) . . . ."), (b)(2) ("A mortgage servicer shall contact the borrower in

5    person or by telephone in order to assess the borrower's financial situation and explore options for

6    the borrower to avoid foreclosure.").

7         The defendants argue that Ms. Green's allegations undermine her section 2923(b)(2) claim

8    because she alleges that she and CMC communicated about loan modification applications months

9    before the Notice of Default was recorded. (*See* Motion, ECF No. 55 at 20-21.) The court agrees

10    that they do. Several courts have concluded that a section 2923(b)(2) claim fails where the plaintiff

11    mortgagor and the defendant mortgage servicer had been in communication regarding a loan

12    modification before a notice of default was recorded. *See Avnieli v. Residential Credit Solutions,*

13    *Inc.*, No 2:15-cv-02877-ODW, 2015 WL 5923532, at *4 (C.D. Cal. Oct. 9, 2015) (granting the

14    defendants' motion to dismiss the plaintiffs' section 2923.55(b)(2) claim where the plaintiffs "had

15    several discussions with [the defendants] regarding loan modification prior to the Notice of

16    Default"); *Field v. Bank of Am., N.A.*, No. 15-cv-01262 NJV, 2015 WL 4647876, at *4 (N.D. Cal.

17    Aug. 5, 2015) ("Plaintiffs' allegations in support of this [section 2923.55(b)(2)] cause of action are

18    negated by their concessions that they were in modification discussions with BANA long before

19    the NOD was recorded."); *Johnson v. SunTrust Mortg., Inc.*, No. CV 14–2658 DSF (PJWx), 2014

20    WL 3845205, at *4 (C.D. Cal. Aug. 4, 2014) ("Because Plaintiffs concede that they had

21    discussions with SunTrust regarding their financial situation and loan modification options, this

22    alleged violation of Section 2923.55(b)(2) fails."). Here, Ms. Green alleges that she had a

23    "conversation" with CMC about a loan modification as early as September 2013, that CMC asked

24    Ms. Green to send it document to be considered for a loan modification, that she submitted the

25    first loan modification application in December 2013, and that the Notice of Default was not

26    recorded until March 2014. (SAC, ECF No. 54, ¶¶ 38, 45-49.) These allegations undermine her

27    allegation that no one at CMC ever discussed loss mitigation efforts with her, whether in person or

28    by telephone. (*See id.* ¶¶ 45, 49.) A loan modification is a loss mitigation effort. Ms. Green's first

United States District Court
Northern District of California

claim for violation of section 2923.55(b)(2) therefore fails. Because a conversation took place more than 30 days before the foreclosure was initiated, and Ms. Green cannot now plead around this, the court dismisses her first claim with prejudice.

### 6.2   HBOR – Cal. Civ. Code § 2923.6

In her second claim, Ms. Green alleges that the defendants violated California Civil Code § 2923.6. (SAC, ECF No. 54, ¶¶ 83-89.) Section 2923.6(c) provides:

> (c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Ms. Green alleges that she "never received a written denial letter, prior to the Notice of Default and Notice of Trustee's Deed Upon Sale being filed, for the complete loan modification application that she submitted in January 2014." (SAC, ECF No. 54, ¶ 84.) Thus, the defendants "violated Civil Code section 2923.6 by proceeding towards foreclosure, even though they have never made a determination on [her] complete loan modification applications prior to initiating foreclosure or scheduling a sale time." (*Id.* ¶ 85.)

As an initial matter, the defendants argue that section 2923.6(c)(1) applies to mortgage servicers only and does not apply to beneficiaries such as Deutsche Bank. (Motion, ECF No. 55 at 22.) To be sure, subsection (c)(1) applies to only mortgage servicers, but subsection (c)(1) does not set forth the prohibited conduct. The prohibited conduct is set forth in the paragraph above it. It states that if a borrower submits a complete loan modification application, "a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent" cannot record a notice of default or notice of

1    sale, or conduct a trustee's sale, while the application is pending. The statute applies to

2    beneficiaries.

3        The defendants next argue that Ms. Green did not allege that a complete loan modification

4    application was pending at the time a notice of default, notice of trustee's sale, or trustee's deed

5    upon sale was recorded. (Motion, ECF No. 55 at 22-23.) They are right. First, the defendants

6    highlight that the Notice of Default was recorded on March 7, 2014, but Ms. Green alleges that by

7    letter CMC denied Ms. Green's first loan modification application two months earlier in January

8    2014 because her application was incomplete. (*See* SAC, ECF No. 54, ¶¶ 47-48.) Second, they

9    point out that the Notice of Trustee's Sale was recorded on June 12, 2014, before Ms. Green

10   allegedly submitted more documents to CMC "in late June" 2014. (*See id.* ¶ 50.) Third, they note

11   that Ms. Green also alleges that CMC "subsequently" (i.e., sometime before August 2014 (*see id.*

12   ¶ 55)) sent her a "denial letter" denying this second loan modification application, before the

13   Trustee's Sale took place in September 2014. (*See id.* ¶ 53.) Even if CMC improperly denied Ms.

14   Green's loan modifications (as she alleged), this does not change the fact that CMC denied them

15   and therefore they was not pending when the foreclosure documents were recorded. Because,

16   according to Ms. Green's allegations, her first loan modification application was not pending in

17   March 2014 when the Notice of Default was recorded, the Notice of Trustee's Sale was recorded

18   before she allegedly submitted a second loan modification application, and her second loan

19   modification application was not pending in September 2014 when the Trustee's Sale took place,

20   the defendants did not violate section 2923.6(c). She did not have an application pending when

21   any those events took place. Accordingly, the court dismisses her second claim for violation of

22   section 2923.6(c).[4] Because this timeline is clear, and Ms. Green cannot plead around it, the court

23   dismisses her second claim with prejudice.

24

25

_____

26   [4] Because Ms. Green alleges that she received written denials of both of her loan modification
     applications, the court need not address the defendants' argument (which Ms. Green did not
27   respond to in her opposition) that any lack of denial was not material. (*See* Motion, ECF No. 55 at
     23-24 (citing Cal. Civ. Code § 2924.12 (providing remedies for "material" HBOR violations
28   only)).)

ORDER (No. 3:14-cv-04281-LB)

### 6.3   HBOR – Cal. Civ. Code § 2923.7

In her third claim, Ms. Green alleges that the defendants violated California Civil Code § 2923.7. (SAC, ECF No. 54, ¶¶ 90-93.)

Section 2923.7 provides that, when a borrower requests a foreclosure-prevention alternative, such as a loan modification, the servicer must promptly designate a "single point of contact" ("SPOC") to communicate directly with the borrower. Cal. Civ. Code § 2923.7(a). The SPOC can be an individual or a team, but must (among other things[5]) possess sufficient knowledge about foreclosure alternatives and have access to individuals who have the ability and authority to stop foreclosure proceedings. *See id.* §§ 2923.7(b)-(d). Moreover, "[t]he mortgage servicer shall ensure that each member of the [SPOC] team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." *Id.* § 2923.7(e).

Ms. Green alleges that the defendants violated section 2923.7 because, despite her numerous requests to speak to CMC representatives about the status of her loan modification application" and the trustee's sale, she was "never able to speak to a designated single point of contact, and no one at [CMC] could provide her with accurate information regarding the [L]oan or foreclosure." (SAC, ECF No. 54, ¶ 91.) "Instead," she "received contradictory and confusing information about which documents were needed to be sent to" CMC. (*Id.*) "As a result of the confusion [this] created," CMC sold the Property without Ms. Green's knowledge. (*Id.*)

---

[5] The SPOC is responsible for all the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal. Civ. Code § 2923.7(b).

1       As an initial matter, the defendants argue that Deutsche Bank cannot be liable for a violation

2   of section 2923.7 because section 2923.7 applies only to loan servicers. (Motion, ECF No. 55 at

3   24.) This is true. *See Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1152 (N.D. Cal.

4   2013) (finding that section 2923.7 "imposes duties only on the loan servicer"). The court

5   dismisses the claim with prejudice insofar as Ms. Green brings it against Deutsche Bank.

6       The defendants also say that section 2923.7 "only requires the servicer to establish a SPOC

7   '[u]pon request from a borrower.'" (Motion, ECF No. 55 at 24 (quoting Cal. Civ. Code § 2923.7).)

8   Although they do not explicitly argue it, the defendants imply that Ms. Green's claim fails because

9   she does not allege that she requested a SPOC. (*See id.*) Federal courts sitting in California are

10  split on whether a borrower has to. Some courts have found that the statute is not triggered unless

11  a borrower specifically requests a SPOC. *See Jerviss v. Select Portfolio Servicing, Inc.*, No. 2:15-

12  cv-01904-MCE-KJN, 2015 WL 6081994, at *4 (E.D. Cal. Oct. 13, 2015); *Hatton v. Bank of Am.*,

13  N.A., No. 1:15-cv-00187-GSA, 2015 WL 4112283, at *6 (E.D. Cal. July 8, 2015); *Carbajal v.*

14  *Wells Fargo Bank, N.A.*, No. CV 14-7851 PSG (PLAx), 2015 WL 2454054, at *7 (C.D. Cal. Apr.

15  10, 2015); *Garcia v. PNC Mortg.*, No. C 14-3543 PJH, 2015 WL 534395, at *5 (N.D. Cal. Feb., 9,

16  2015); *Diamos v. Specialized Loan Servicing LLC*, No. 13-cv-04997 NC, 2014 WL 5810453, at

17  *3-4 (Nov. 11, 2014); *Williams v. Wells Fargo Bank, NA*, No. EDCV 13-02075 JVS (DTBx),

18  2014 WL 1568857, at *8 (C.D. Cal. Jan. 27, 2014). Other courts have found that the statute

19  requires a servicer to appoint a SPOC upon the borrower's request for a foreclosure prevention

20  alternative. *See Mora v. US Bank*, No. CV 15-02436 DDP (AJWx), 2015 WL 4537218, at *5

21  (C.D. Cal. July 27, 2015); *Major v. Wells Fargo Bank, N.A.*, No. 14cv998-LAB (RBB), 2015 WL

22  2449516, at *4 (S.D. Cal. May 22, 2015); *Hild v. Bank of Am., N.A.*, No. EDCV 14-2126-JGB

23  (SPx), 2015 WL 401316, *7 (C.D. Cal. Jan. 29, 2015); *Penermon v. Wells Fargo Bank, N.A.*, 47 F.

24  Supp. 3d 982, 1000 (N.D. Cal. 2014); *Mungai v. Wells Fargo Bank*, No. C-14-00289 DMR, 2014

25  WL 2508090, at *9-10 (N.D. Cal. June 3, 2014).

26      The court follows the rulings of the latter courts. As one court explained:

27          Under the plain meaning of the statute, a mortgage servicer's obligation to establish
            a single point of contact is triggered "upon request from a borrower who requests a
28          foreclosure prevention alternative," not upon request from a borrower who requests

United States District Court
Northern District of California

a single point of contact. In the phrase "upon request from a borrower who requests a foreclosure prevention alternative," the words "upon request" and "a borrower who requests" refer to the same request; namely, the borrower's request for a foreclosure prevention alternative. The phrase "upon request" simply indicates when the SPOC must be assigned (i.e., upon the borrower's request for a foreclosure prevention alternative, as opposed to the borrower's selection of a foreclosure prevention alternative).

*Mungai*, 2014 WL 2508090, at \*9. And another court persuasively reasoned that:

[T]o the degree that the statute is ambiguous, Defendant's reading also runs against the general canon that a statute should not be read to defeat itself. To read the statute as requiring an explicit request would at best place an unnecessary technical burden on borrowers and at worst defeat the intent of the statute altogether: most borrowers are unlikely to be aware of the language of § 2923.7 and are therefore unlikely to demand their right to a single point of contact.

*Mora*, 2015 WL 4537218, at \*5 n.1. The court agrees with these courts that section 2923.7 requires a loan servicer to appoint a SPOC upon the borrower's request for a foreclosure prevention alternative. Accordingly, the court rejects the defendants' argument that section 2923.7 was not triggered in this case.

Finally, the defendants argue that Ms. Green's claim fails because she does not allege that she was harmed by any violation of section 2923.7. (Motion, ECF No. 55 at 24.) They say that because "she admits that CMC reviewed her [loan modification] application twice, informed her of its decision, and provider her [with] the time and opportunity to appeal," she "cannot truthfully allege that she was unaware of the application process, or the documents required to proceed with the review." (*Id.* at 24-25.) The defendants mischaracterize Ms. Green's allegations. Although she alleges that she submitted two loan modification applications to CMC and that CMC sent her letters denying those applications, she also alleges that CMC's representatives gave her conflicting information. (*See* SAC, ECF No. 54, ¶ 91.) Ms. Green also clearly alleges that she was harmed: "As a result of the confusion" created by "never [being] able to speak to a designated single point of contact" and by not being provided with "accurate information regarding the [L]oan or foreclosure," CMC sold the Property without Ms. Green's knowledge. (*Id.*) The court thus rejects the defendants' argument that Ms. Green failed to sufficiently allege a section 2923.7 violation against CMC.

United States District Court
Northern District of California

**6.4   HBOR – Cal. Civ. Code § 2924.17**

In her fourth claim, Ms. Green alleges that the defendants violated California Civil Code § 2924.17. (SAC, ECF No. 54, ¶¶ 94-96.) Section 2924.17 provides in relevant part:

> (a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.
>
> (b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Cal. Civ. Code § 2924.17(a)-(b).

Ms. Green alleges that a CMC representative falsely stated in Exhibit A to the March 7, 2015 Notice of Default that CMC exercised due diligence in an attempt to contact the borrower but was unable to do so. (SAC, ECF No. 54, ¶ 95.) She alleges that because this statement was false, CMC had no right to foreclose. (*Id.*)

First, the defendants argue that section 2924.17 applies only to mortgage servicers and does not apply to beneficiaries under deeds of trust, so the claim must be dismissed as to Deutsche Bank. (Motion, ECF No. 55 at 22.) It is true that the statute appears to apply only to the mortgage servicer or a party recording a declaration on behalf of the mortgage servicers. In response, Ms. Green says that the statute "actually applies to everyone," but she cites no authority to support this statement. She also says that the statute is "not subject to the limitations of California Civil Code § 2920.5," but section 2920.5 only provides definitions for the terms "mortgage servicer," foreclosure prevention alternatives," "borrower," and "first lien"; section 2920.5 says nothing about whether section 2924.17 applies to beneficiaries such as Deutsche Bank. The court thus dismisses the claim with prejudice insofar as Ms. Green brings it against Deutsche Bank.

Second, the defendants argue that "[b]ecause Plaintiffs' § 2923.55 claim [(Claim One)] fails in that Plaintiffs do not state facts that Defendants did not comply with the statute, their § 2924.17 claim fails for the same reasons." (Motion, ECF No. 55 at 22.) The court notes, however, that the servicer's requirements under section 2923.55 and different from the mortgage servicer's

United States District Court
Northern District of California

1   requirements under section 2924.17. Section 2923.55(b)(2) requires "[a] mortgage servicer [to]

2   contact the borrower in person or by telephone in order to assess the borrower's financial situation

3   and explore options for the borrower to avoid foreclosure." Section 2924.17, on the other hand,

4   requires a declaration filed by or on behalf of a mortgage servicer in connection with a foreclosure

5   to be "accurate and complete and supported by competent and reliable evidence," and requires the

6   mortgage servicer to "ensure that it has reviewed competent and reliable evidence to substantiate

7   the borrower's default and the right to foreclose, including the borrower's loan status and loan

8   information."

9       This difference matters because in Exhibit A to the Notice of Default, CMC's representative

10  declared that CMC "was unable to make contact with the Borrower" but that CMC sent a first-

11  class letter and a letter via certified mail to the Trust regarding the default and foreclosure

12  alternatives and also attempted to contact the Trust by telephone at least 3 times at 3 different

13  hours on 3 different days at the primary telephone number on file. (RJN, Ex. 4, ECF No. 56-1 at

14  31.) Ms. Green alleges that CMC did not do all of these things. So even if the communications

15  between Ms. Green and CMC were sufficient to satisfy section 2923.55's obligations (as the court

16  found above), CMC still may not have done what its representative said it did in Exhibit A to the

17  Notice of Default. If that is the case, then Exhibit A may not have been "accurate and complete

18  and supported by competent and reliable evidence." At this stage in the litigation, the discrepancy

19  between CMC's declaration (Exhibit A to the Notice of Default) and Ms. Green's allegations is

20  enough to state a plausible claim against CMC for violation of section 2924.17.

21  **6.5   RESPA**

22      In her fifth claim, Ms. Green alleges that the defendants violated regulations promulgated

23  pursuant to RESPA, 12 U.S.C. § 2605, namely 12 C.F.R. § 1024.41(b)(2)(i) and 12 C.F.R. §

24  1024.41(f)(2). (SAC, ECF No. 54, ¶¶ 97-104.)

25      The first regulation, 12 C.F.R. § 1024.41(b)(2)(i), provides:

26          If a servicer receives a loss mitigation application 45 days or more before a
            foreclosure sale, a servicer shall:

27

28          (A) Promptly upon receipt of a loss mitigation application, review the loss
                mitigation application to determine if the loss mitigation application is

                                                                                        26

United States District Court
Northern District of California

complete; and

(B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

Ms. Green alleges that the defendants violated this regulation in two ways. First, the defendants violated it because she submitted a complete loan modification application in January 2014, but CMC failed to acknowledge her application until June 2014. (SAC, ECF No. 54, ¶ 99.) Second, the defendants violated it because CMC failed to evaluate her for all available loss mitigation options and instead simply denied her application "erroneously." (*Id.* ¶ 100.)

The second regulation, 12 C.F.R. § 1024.41(f)(2), provides:

(2) Application received before foreclosure referral. If a borrower submits a complete loss mitigation application . . . before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

(i)   The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(ii)  The borrower rejects all loss mitigation options offered by the servicer; or

(iii) The borrower fails to perform under an agreement on a loss mitigation option.

Ms. Green alleges that the defendants violated this regulation because CMC "filed the Notice of Default in March 2014 without serving the notice" fulfilling all of the requirements of section 1024.41(f)(2)(i). (SAC, ECF No. 54, ¶ 102.)

The defendants make several arguments with respect to this claim. First, they point out that the regulations Ms. Green cites apply only to loan servicers and do not apply to beneficiaries such as

United States District Court
Northern District of California

1   Deutsche Bank. (Motion, ECF No. 55 at 25.) They are correct. S*ee Bennett v. Nationstar Mortg.*,

2   No. CA 15-00165-KD-C, 2015 WL 5294321, at *10 (S.D. Ala. Sept. 8, 2015) (dismissing claim

3   against a defendant who was not a "servicer"). The regulations circumscribe the conduct of loan

4   servicers only. Moreover, Ms. Green never alleges that Deutsche Bank acted as a loan servicer or

5   committed any prohibited conduct; she alleges only that CMC committed prohibited conduct. She

6   also failed to address this argument in her opposition. The court thus dismisses the claim with

7   prejudice insofar as Ms. Green brings it against Deutsche Bank.

8        Next, the defendants argue that Ms. Green's claim for violation of section 1024.41(b)(2)(i)

9   fails because she cannot credibly allege that CMC never acknowledged her January 2014 loan

10  modification application (her first one) when she also alleges that (1) CMC acknowledged

11  receiving the "documents to be considered for a loan modification" and also acknowledged that

12  Ms. Green's application was "under review," and (2) CMC subsequently denied her application on

13  the basis that it had not received all of the documents it requested. (Motion, ECF No. 55 at 25

14  (citing SAC, ECF No. 54, ¶ 46-48).) This particular argument is not persuasive. Section

15  1024.41(b)(2)(i) does not simply require an acknowledgement; it requires that an acknowledgment

16  containing specific things be sent within a certain time. That said, Ms. Green did allege that CMC

17  acknowledged receiving her application in January 2014 but she never alleges when CMC sent

18  that acknowledgement or that CMC's acknowledgment did not include the required things. She

19  also never addresses the defendants' argument in her opposition. (*See* Opposition, ECF No. 59 at

20  20 (responding to the argument at page 17 of the defendants' motion, not the argument at page 25

21  of the defendants' motion).) Without more specific allegations about CMC's acknowledgement,

22  she does not plausibly allege a claim for violation of section 1024.41(b)(2)(i). It is not clear

23  whether Ms. Green can or cannot sufficiently allege that CMC's acknowledgment failed to comply

24  with section 1024.41(b)(2)(i). Accordingly, the court dismisses her section 1024.41(b)(2)(i)  claim

25  without prejudice.

26       With respect to Ms. Green's claim for violation of section 1024.41(f)(2), the defendants point

27  out that this section applies only if a borrower submits a "complete" loan modification application

28  and argue that Ms. Green does not allege that she submitted one. (Motion, ECF No. 55 at 25.) But

ORDER (No. 3:14-cv-04281-LB)

Ms. Green does allege that she submitted a complete loan modification application in early

January 2014. (*See* SAC, ECF No. 54, ¶ 46-48.) That CMC allegedly denied her application on the

ground that it was not complete does not require dismissal of the claim. Whether her application

was complete is a question of fact to be resolved at summary judgment, not at the motion-to-

dismiss stage.

The defendants also argue that Ms. Green alleges that CMC sent her a notice on January 24,

2014, which stated that she was ineligible to receive a loan modification because the loan

modification application packet was incomplete. (Motion, ECF No. 55 at 25 (citing SAC, ECF No.

54, ¶ 48.) They say this undermines her claim. In Paragraph 48 of her Second Amended

Complaint, Ms. Green alleges that the letter informed her that she was ineligible to receive a loan

modification because her application was incomplete. (*See* SAC, ECF No. 54, ¶ 48.) She did not

allege that the letter informed her that she was ineligible for *any* loss mitigation option, which is

what the regulation requires. The court does not find that her allegation at Paragraph 48

undermines this claim. Accordingly, the court concludes that Ms. Green's claim against CMC for

violation of section 1024.41(f)(2) survives.

### 6.6   ECOA – 15 U.S.C. § 1691(d)(1)

In her sixth claim, Ms. Green alleges that the defendants violated ECOA. (SAC, ECF No. 54,

¶¶ 105-09.) 15 U.S.C. § 1691(d)(1), the subsection she alleges the defendants violated, states:

"Within thirty days (or such longer reasonable time as specified in regulations of the Bureau for

any class of credit transaction) after receipt of a completed application for credit, a creditor shall

notify the applicant of its action on the application." Ms. Green alleges that the defendants

violated section 1691(d)(1) because she "submitted a complete application for credit, i.e., a

complete loan modification application," in January 2014, but CMC did not inform her of its

decision on this application until July 2014, more than 30 days after she submitted it. (SAC, ECF

No. 54, ¶¶ 106-07.)

The defendants correctly point out that ECOA applies only to creditors and note that Ms.

Green does not allege that Deutsche Bank was a creditor. (Motion, ECF No. 55 at 27.) They also

point out that Ms. Green does not allege that Deutsche Bank took any action with respect to this

United States District Court
Northern District of California

claim. (*Id.*) The court thus dismisses the claim with prejudice insofar as Ms. Green brings it against Deutsche Bank.

The defendants next argue that CMC was not obligated to notify Ms. Green of its action on her loan modification application within 30 days because an "adverse action for purposes of the ECOA does not include 'refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default,'" and in this case the Trust was in default. (Motion, ECF No. 55 at 26-27 (quoting 15 U.S.C. 1691(d)(6)).) They cite one case, *Owens v. Bank of America, N.A.*, No. 11-cv-458-YGR, 2013 WL 1820769 (N.D. Cal. Apr. 30, 2013), where the court dismissed a plaintiff's ECOA claim because the plaintiffs were in default on their mortgage. *See id.* at *5. The court is not persuaded by the defendants' argument. First, *Owens* involved a claim under section 1691(d)(2), which requires a creditor to do certain things when it takes an "adverse action" with respect to an applicant's application. Section 1691(d)(1), however, requires a creditor to notify the applicant about its "action" on an application. Ms. Green brings a claim for violation of section 1691(d)(1), not section 1691(d)(2). At least one court has recognized this distinction and read section 1691(d) as follows:

> Under Section 1691, an "adverse action" triggers a creditor's obligation to provide a statement of reasons, not its obligation to provide a determination within thirty days, which is triggered by the completion of the application for credit. *Compare* 11 U.S.C. § 1691(d)(1) *with* § 1691(d)(2). The phrase "adverse action" does not appear in Section 1691(d)(1). Accordingly, a plain reading of the statute confirms that creditors are required to make a determination on a completed application within thirty days regardless of the status of the applicant, but need not send applicants in default a statement of reasons when their application is rejected. *See id.* at § 1691(d)(6). Neither a plain reading of the statute nor public policy supports a rule requiring a creditor to promptly resolve applications of non-defaulting applicants while permitting creditors to leave those applicants in default twisting in the wind indefinitely.

*MacDonald v. Wells Fargo Bank, N.A.*, No. 14-cv-04970-HSG, 2015 WL 1886000, at *3 (N.D. Cal. Apr. 24, 2015). The court finds *MacDonald*'s reading of the statute to be the correct one. The court rejects the defendants' statutory interpretation argument.

In their reply, the defendants argue for the first time that Ms. Green also has not alleged the basic elements of an ECOA violation. (*See* Reply, ECF No. 60 at 10.) They cite the four elements outlined by the district court in *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039

(N.D. Cal. 2009). The court there stated that "to determine whether a plaintiff properly has pleaded a claim of discrimination under the ECOA," a plaintiff "must allege that: (1) she is a member of a protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified." *Id.* at 1045. The defendants' argument does not distinguish between violations of ECOA's discrimination provisions and violations of ECOA's procedural requirements. *Compare* 15 U.S.C. §§ 1691(a)-(c) *with* 15 U.S.C. §§ 1691(d)-(e); *see also Vasquez v. Bank of Am., N.A.*, No. 13-cv-02902-JST, 2013 WL 6001924, at *11 (N.D. Cal. Nov. 12, 2013) (discussing this distinction). This is important because, as one court in this district has persuasively noted, "*Hafiz* did not involve the procedural notice requirements of the ECOA," and "ECOA's procedural requirements apply regardless of whether the *Hafiz* prerequisites have been satisfied." *Vasquez*, 2013 WL 6001924, at *12. Ms. Green's ECOA claim survives.

### 6.7   Negligent Misrepresentation and Fraud

In her seventh and eight claims, Ms. Green alleges claims against the defendants for negligent misrepresentation and fraud. (Motion, ECF No. 54, ¶¶ 110-19.)

To state a claim for negligent misrepresentation, a plaintiff must allege the following: "1) a representation as to a material fact; 2) that the representation is untrue; 3) that the defendant made the representation without a reasonable ground for believing it true; 4) an intent to induce reliance; 5) justifiable reliance by the plaintiff who does not know that the representation is false; and, 6) damage." *Bear Stearns & Co. v. Daisy Sys. Corp.*, 97 F.3d 1171, 1180 (9th Cir. 1996) (citing *Masters v. San Bernardino County Employees Retirement Ass'n*, 32 Cal. App. 4th 30, 40 n.6 (1995)). As with intentional misrepresentation, the existence of a duty of care is necessary to support a negligent misrepresentation claim. *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1523 (N.D. Cal. 1990) ("Liability for negligent misrepresentation may attach only where plaintiff establishes that defendants breached a duty owed to him"); *Garcia v. Superior Court*, 50 Cal. 3d 728, 735 (1990).

"A cause of action for fraud [under California law] requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages."

*Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192 (9th Cir. 2001) (quoting *Wilkins v. Nat'l Broadcasting Co.*, Inc., 71 Cal. App. 4th 1066, 1082 (1999)); *see also* Cal. Civ. Code § 1572.

In addition, the court applies Federal Rule of Civil Procedure 9(b)'s heightened pleading standard to claims for fraud and negligent misrepresentation. *See Kelley v. Rambus, Inc.*, 384 Fed. App'x 570, 573 (9th Cir. June 16, 2010) (Kelley's [California] state law claims for common law fraud and negligent misrepresentation fail to meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure."); *Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1049 (N.D. Cal. 2010) ("[N]egligent misrepresentation 'sounds in fraud' and is subject to Rule 9(b)'s heightened pleading standard . . . ."); *Neilson v. Union Bank of Cal.*, N.A., 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003); *but see Petersen v. Allstate Indem. Co.*, 2012 U.S. Dist. LEXIS 32968, *8-9, 2012 WL 833034 (C.D. Cal. Mar. 12, 2012) (finding that Rule 9(b) does not apply to negligent misrepresentation claims; criticizing *Neilson* ). Under Rule 9(b), a party alleging fraud or intentional or negligent misrepresentation must satisfy a heightened pleading standard by stating with particularity the circumstances constituting fraud. Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Further, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (superceded by statute on other grounds)). A plaintiff must also differentiate his allegations when suing more than one defendant, especially in the context of fraud claims. *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).

The basis of both claims is her allegation that CMC "repeatedly told [her] that [it] had not received all necessary documents to be considered for a loan modification when [it actually] had." (SAC, ECF No. 54, ¶¶ 111, 115.) She also alleges that she relied upon CMC's representations "by accruing substantial late charges, failing to take other actions to save her home such as obtaining a loan with another lender or finding a friend/relative that [could have] provide[d] financial assistance, and not taking legal action earlier, even though [she had] numerous viable claims

ORDER (No. 3:14-cv-04281-LB)

against" CMC. (*Id.* ¶¶ 112, 118.) She further alleges that she has been "damaged through damaged credit, loss of title to her home, unwarranted late fees, and other charges by [CMC] and having to pay legal costs and expenses." (*Id.* ¶¶ 112, 118.) She also has "suffered emotional distress for fear of losing [her] home." (*Id.* ¶¶ 112, 118.) In addition to these allegations, Ms. Green also alleges with respect to her negligent misrepresentation claim that CMC "denied [her] for a loan modification on the basis of insufficient income by grossly miscalculating [her] gross income." (*Id.* ¶ 111.)

The defendants first argue that Deutsche Bank must be dismissed from these claims because Ms. Green makes no specific allegations against it. (Motion, ECF No. 55 at 29, 30.) Indeed, Ms. Green's only mention of Deutsche Bank in this claim is when she alleges, without elaboration, that CMC is Deutsche Bank's agent. (SAC, ECF No. 54, ¶¶ 111, 115.) The rest of the claims simply describes CMC's conduct. (*See id.* ¶¶ 111-13, 115-18.) Ms. Green does not respond to this argument in her opposition. (*See* Opposition, ECF No. 59 at 21-24.) The court thus dismisses the negligent misrepresentation and fraud claims with prejudice insofar as Ms. Green brings them against Deutsche Bank.

Next, the defendants argue that Ms. Green's allegations are not particular enough to meet Rule 9(b)'s heightened pleading requirement. (Motion, ECF No. 55 at 27, 30.) The court disagrees. She identifies who made the misrepresentations: CMC. Her claims are largely based on letters she received from CMC as an entity, not on conversations she had with particular individuals, so this is sufficient. She identifies the misrepresentation: CMC telling her that her first loan modification application was incomplete even though, as she alleges, it was complete, and by falsely using a miscalculated gross income. She also identifies when the misrepresentation was made: when CMC denied her loan modification applications. In short, Ms. Green has stated with particularity the circumstances constituting the alleged negligent misrepresentation and fraud.

The defendants also argue that Ms. Green's negligent misrepresentation claims fails because she alleges no facts to suggest that they owed a duty to her. (Motion, ECF No. 55 at 28-29.) The court has faced this issue before and concluded that whether a lender has a duty of care requires the balancing of the non-exhaustive factors listed in *Nymark v. Heart Fed. Savings & Loan Ass'n*,

33

United States District Court
Northern District of California

231 Cal. App. 3d 1089, 1098 (1991). *See Rowland v. JP Morgan Chase Bank*, No. C 14-00036 LB, 2014 WL 992005, at *8-9 (N.D. Cal. Mar. 12, 2014); *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, No. C 13-05881 LB, 2014 WL 890016, at *14-17 (N.D. Cal. Mar. 3, 2014). As the court has explained:

> Under California law, as Defendants point out, lenders generally do not owe borrowers a duty of care unless their involvement in the loan transaction exceeds the scope of their "conventional role as a mere lender of money." *See Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) (citations omitted). To determine "whether a financial institution owes a duty of care to a borrower-client," courts must balance the following non-exhaustive factors:
>
>> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.
>
> *Id.* at 1098 (quotation marks and citations omitted).

*Rowland*, 2014 WL 992005, at *8. In *Rijhwani*, the court found that *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10–0290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010) (finding that a servicer had a duty of care to a borrower under the *Nymark* factors), is persuasive and instructive. As the court explained, in *Garcia*:

> the defendant had [at least twice] cancelled the trustee's sale to allow time for processing the plaintiff's application. The defendant asked the plaintiff to submit various documents in connection with the loan modification request. The plaintiff did so, but upon receiving the documents, the defendant routed them to the wrong department. Later, the plaintiff's agent received a recorded message indicating documents were missing, but the message did not identify which ones were missing. For the next several weeks, the plaintiff's agent repeatedly tried to contact the defendant to determine which documents were missing, but he was unable to speak with any of the defendant's employees. The plaintiff's agent was finally able to actually speak with one of the defendant's employees, but it was too late. The employee informed the plaintiff's agent that the home had been sold at a trustee's sale the day before.
>
> The court concluded that at least five of the six factors cited above weighed in favor of finding that the defendant owed the plaintiff a duty of care in processing the plaintiff's loan modification application. [*Garcia*, 2010 WL 1881098,] at *3-4.

*Rijhwani*, 2014 WL 890016, at *16-17.

After weighing the *Nymark* factors, the court finds that Ms. Green's allegations are sufficient,

United States District Court
Northern District of California

at least at this stage of the litigation, to support a finding that the defendants owed her a duty of care. The potential loan modifications were intended to affect her (as trustee of the Trust); it was foreseeable that improperly denying her loan modification applications would harm her; the Property was foreclosed upon so she suffered harm; the foreclosure likely would not have occurred had CMC not improperly denied her applications; if CMC did in fact improperly deny her applications, it is morally blameworthy; and requiring a duty in this context would help to prevent future harm. This is sufficient at this time. The defendants may revisit this issue on summary judgment after discovery is taken.

Lastly, the defendants argue that Ms. Green has not alleged justifiable reliance on CMC's purported misrepresentations. (Motion, ECF No. 55 at 29, 31.) The court disagrees. Ms. Green alleges that she relied upon CMC's representations "by accruing substantial late charges, failing to take other actions to save her home such as obtaining a loan with another lender or finding a friend/relative that [could have] provide[d] financial assistance, and not taking legal action earlier, even though [she had] numerous viable claims against" CMC. (SAC, ECF No. 54, ¶¶ 112, 118.) The defendants say that this is not sufficient as a matter of law, but the opinion it cites, which was dealing with promissory estoppel and not negligent misrepresentation or fraud, says only that "[m]erely submitting a modification application or making payments to the beneficiary or servicer, however, is insufficient to establish the required detrimental reliance, because plaintiff was already legally obligated to make payments under the loan." *Ortiz v. America's Servicing, Co.*, No. EDCV 12–191 CAS (SPx), 2012 WL 2160953, at *7 (C.D. Cal. June 11, 2012). This court, on the other hand, has denied motions to dismiss on this ground where a plaintiff has alleged reliance more specifically, as Ms. Green has, in support of fraud and misrepresentation claims. *See Cruz v. Aurora Loan Servs.*, LLC, No. 3:15-cv-00585-LB, 2015 WL 4915452, at *6 (Aug. 17, 2015); *Khan v. ReconTrust Co.*, 81 F. Supp. 3d 867, 875 (N.D. Cal. 2015). The court does so again. Ms. Green's negligent misrepresentation and fraud claims against CMC survive.

### 6.8   Wrongful Foreclosure and Cancellation of Deed

In her ninth and eleventh claims, Ms. Green brings equitable claims for wrongful foreclosure and cancellation of the Deed of Trust showing Deutsche Bank's purchase of the Property at the

ORDER (No. 3:14-cv-04281-LB)

United States District Court
Northern District of California

Trustee's Sale. (SAC, ECF No. 54, ¶¶ 120-24, 131-34.) The defendants make two arguments regarding these claims. First, they argue that the claims fail because Ms. Green has not alleged that she made a viable tender of the amount owed. (Motion, ECF No. 31, 32.) The court, however, already rejected the defendants' tender argument. Second, the defendants say that these claims are derivative of Ms. Green's other claims, and because those claims fail, so do these. (*Id.* at 31, 32.) But as the court ruled above, not all of Ms. Green's other claims fail, so neither do these. They survive.

### 6.9   Unfair Business Practices – Cal. Bus. & Prof. Code §§ 17200 *et seq.*

Ms. Green's tenth claim is for violation of the UCL. (SAC, ECF No. 54 ¶¶ 125-30.) The defendants argue only that this claim is derivative of Ms. Green's other claims, and because those claims fail, so does this one. (Motion, ECF No. 55 at 31.) The court has ruled that not all of Ms. Green's other claims fail, so neither does this one. It survives.

### 6.10  Declaratory Relief

Ms. Green's twelfth claim is for declaratory relief. (SAC, ECF No. 54, ¶¶ 135-40.) The federal Declaratory Judgment Act applies in this action. *See Guccione v. JPMorgan Chase Bank, N.A.*, No. 3:14–cv–04587 LB, 2015 WL 1968114, at *20-21 (N.D. Cal. May 1, 2015). The defendants argue only that this claim is derivative of Ms. Green's other claims, and because those claims fail, so does this one. (Motion, ECF No. 55 at 32-33.) The court has ruled that not all of Ms. Green's other claims fail. This claim survives.

### CONCLUSION

The court grants in part and denies in the part the defendants' motion.

The Trust and Ms. Green, in her individual capacity, are dismissed as plaintiffs to this action. Only Ms. Green, in her capacity as trustee of the Trust, remains as the plaintiff.

Ms. Green's first and second claims are dismissed with prejudice against both CMC and Deutsche Bank. Her third, fourth, sixth, seventh, and eighth claims are dismissed with prejudice against Deutsche Bank, but they survive against CMC. Her fifth claim is dismissed with prejudice against Deutsche Bank, dismissed without prejudice against CMC insofar as it alleges a violation of 12 C.F.R. § 1024.41(b)(2)(i), and survives against CMC insofar as it is based on a violation of

ORDER (No. 3:14-cv-04281-LB)

United States District Court
Northern District of California

1    12 C.F.R. § 1024.41(f)(2). Her ninth, tenth, eleventh, and twelfth claims survive against both

2    CMC and Deutsche Bank.

3        If Ms. Green choses to file a Third Amended Complaint to re-allege a claim against CMC for

4    violation of 12 C.F.R. § 1024.41(b)(2)(i), she must do so within 14 days from the date of this

5    order.

6        **IT IS SO ORDERED.**

7        Dated: December 1, 2015

8                                              _____

9                                              LAUREL BEELER
                                               United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

                                                                              37
ORDER (No. 3:14-cv-04281-LB)